IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STEWART L. JORDAN, III,

      Movant,

v.                                                                                    Case No. 3:21-cv-00343
                                                                                       Case No. 3:20-cr-00046-01

UNITED STATES OF AMERICA,

      Respondent.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 filed by Stewart L. Jordan, III ("Jordan").[1] (ECF No. 32). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 33). Having determined from a thorough review of the record that Jordan clearly is not entitled to relief under 28 U.S.C. § 2255, and credibility does not play a role in resolving his claims, the undersigned **FINDS** no basis for an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED,** and this civil action be **DISMISSED, with**

---

[1] The ECF numbers used herein are taken from Jordan's underlying criminal action, *United States v. Jordan*, Case No. 3:20-cr-00046-01 (June 18, 2020) ("*Jordan II*").

**prejudice,** and removed from the docket of the Court.

## I.     Procedural History

### A.     *Relevant state charges*

On November 9, 2018, Jordan was arrested and subsequently charged in the Circuit Court of Cabell County, West Virginia with conspiracy and possession with intent to deliver a controlled substance. (ECF No. 26 at 6-7). These charges arose out of the same criminal conduct for which Jordan was later charged and convicted in this Court. A cash bond of $100,000 was set in Cabell County Magistrate Court. *See State of West Virginia v. Jordan,* Case No. CK-6-2018-B-749 (Cabell Cir. Ct. 2018). Jordan did not post bond and was detained on that charge. At the time of the alleged drug-trafficking, Jordan was on parole for a 2011 first degree attempted robbery conviction, again out of Cabell County. (ECF No. 26 at 6). Because of Jordan's new charges, Cabell County placed Jordan on a parole supervision hold. On July 10, 2019, the drug-trafficking charges were dismissed by the State of West Virginia. On April 16, 2020—after Jordan pled guilty in this Court, but before imposition of his sentence—Jordan was discharged from parole by the State of West Virginia; thereby, discharging his 2011 sentence. (*Id.*). Of relevance here, Jordan did not receive a state sentence on either the drug-trafficking charges, or on a parole revocation related to the drug-trafficking charges.

### B.     *Federal conviction and sentencing*

On March 26, 2019, Jordan was indicted by a grand jury in this District on one count of attempted possession with intent to distribute 50 grams or more of methamphetamine. *United States of America v. Jordan*, Case No. 3:19-cr-00085-1 (Mar. 26, 2019) ("*Jordan I*"), ECF No. 1. As previously stated, this indictment was based on the same events of November 9, 2018, which had resulted in Jordan's state drug-trafficking

charges and parole supervision hold. A federal warrant issued for Jordan's arrest, and on August 13, 2019, he was brought before the undersigned United States Magistrate Judge for an initial appearance and arraignment. *Jordan I,* ECF No. 15. At these hearings, Jordan was advised of his rights and of the alleged drug-trafficking charge in accordance with Rules 5 and 10 of the Federal Rules of Criminal Procedure. Jordan entered a plea of not guilty, and an arraignment order was filed. *Id.,* ECF Nos. 15, 16, 17. On January 29, 2020, the indictment was superseded, and Jordan appeared for a second arraignment at which he again entered a plea of not guilty. *Id.,* ECF Nos. 49, 59, 60.

On March 3, 2020, Jordan was charged with the identical criminal conduct in an information. *United States of America v. Jordan*, Case No. 3:20-cr-00046-1 ("*Jordan II*"). (ECF No. 1). That same day, the Government moved to schedule a guilty plea hearing. (ECF No. 2). On March 9, 2020, Jordan appeared before the Court and pled guilty pursuant to an agreement in which he promised to enter a guilty plea to the information in exchange for the Government's promise to seek dismissal of *Jordan I*. (ECF Nos. 7, 11). In the plea agreement, Jordan further agreed to waive his right to be indicted, acknowledged that the penalty for the offense would fall between 5 and 40 years' imprisonment, agreed that under the United States Sentencing Guidelines ("USSG") his base offense level before accounting for acceptance of responsibility was 30, and waived his right to appeal or collaterally attack the judgment except on the basis of ineffective assistance of counsel. (ECF No. 11 at 1–7).

At the Rule 11 hearing, after finding Jordan competent and capable of entering an informed plea, the Court asked Jordan a series of questions concerning the representation provided by his attorney, R. Lee Booten, II ("defense counsel"). (ECF No. 27 at 3–6). Jordan confirmed that he had had enough time to discuss his case with defense counsel;

3

that defense counsel had been able to answer Jordan's questions; and that he was "completely satisfied with the legal advice" provided by defense counsel. (ECF No. 27 at 4–5). The Court, by colloquy, determined that Jordan understood the terms of the plea agreement and allowed it to be filed as part of the record. (*Id.* at 5–8). The Court advised Jordan of his right to be charged in an indictment by a grand jury, explaining the process by which such indictment would be obtained and that without Jordan's waiver of the right he could not be charged with a felony. (*Id.* at 9–10). Jordan affirmed that he had discussed waiver of the right with defense counsel, that he understood it, and that no threats or promises had been made to get him to waive it, and then he signed the waiver. (*Id.* at 10–11). The Court found that Jordan's waiver of his right to indictment was knowing and voluntary and accepted it. (*Id.* at 11–12).

As to the charge in the information, attempted possession with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, the Court explained the elements the government would be required to prove beyond a reasonable doubt if the parties proceeded to trial and the applicable legal standards, and Jordan affirmed that he believed he was guilty of the offense. (*Id.* at 12–13). After Jordan recounted in his own words what he did that comprised the offense conduct, the Government put forth a witness, a law enforcement agent, who testified about the criminal investigation that gave rise to the charge. (*Id.* at 13–18). Defense counsel confirmed with the witness that Jordan did not have weapons or resist arrest, and Jordan acknowledged the truth of the witness's testimony. (*Id.* at 18–19). The Court found a sufficient factual basis for the guilty plea. (*Id.* at 19).

The Court next inquired as to whether Jordan understood the consequences and potential penalty exposure resulting from his conviction, including minimum terms of

incarceration and supervised release, and that he was relinquishing his right to appeal or collaterally attack his judgment except on certain bases. (*Id.* at 19–24). After reviewing with Jordan the additional rights he forfeited upon pleading guilty, and receiving confirmation that no one coerced Jordan into pleading guilty, the Court found that Jordan understood his rights and his plea was voluntary. (*Id.* at 24–27). The Court adjudged Jordan guilty of the charge in the information. (*Id.* at 27).

Jordan appeared before the Court for a sentencing hearing on June 15, 2020. (ECF No. 22). The parties and the Court agreed that, although post-plea lab results yielded a level of methamphetamine purity that correctly placed Jordan in a USSG base offense level of 34, Jordan's base offense level should be 30 as contemplated in the plea agreement. (ECF No. 31 at 2–5). Jordan received a three-level decrease in his USSG range because of his guilty plea, bringing him to an offense level of 27, along with a criminal history category of III. (*Id.* at 6–7). The USSG prescribed a range of 87 to 108 months of imprisonment,[2] and neither defense counsel nor the Government argued for any other departures from that range. (*Id.* at 7–8). Defense counsel twice asked the Court to credit Jordan's time served in state custody toward his federal sentence, as he was arrested for violating his parole in a state criminal matter for the same conduct alleged in the information in his federal case. (*Id.* at 9–10, 15). The Court agreed that the Federal Bureau of Prisons ("BOP") should credit him the time and agreed with the Government that the BOP typically accounts for such time even without a recommendation from a federal court at sentencing. (*Id.* at 15). Ultimately, the Court imposed the USSG minimum of 87 months' imprisonment, followed by four years of supervised release, as well as a $100

---

[2] Had the base offense level of 34 been applied instead of the negotiated offense level of 30, Jordan's USSG sentence range would have been 135 to 168 months of imprisonment.

special assessment. (*Id*. at 13–14). Jordan did not appeal his conviction or sentence.

### C.    *Instant motion under § 2255*

Jordan filed the instant motion on June 16, 2021, asserting two grounds for relief. (ECF No. 32). First, he claims that defense counsel provided ineffective assistance because defense counsel failed to inform Jordan of his "constitutional rights pursuant to" the Federal Rules of Criminal Procedure, and because counsel failed to object to the lack of an initial appearance and preliminary hearing. (*Id*. at 4–5). According to Jordan, if not for defense counsel's deficient performance there is a "reasonable probability that he would not have wanted to plead guilty" and would have insisted on a jury trial. (*Id*. at 4). Second, he asserts that counsel was ineffective during sentencing because he failed to argue for a "downward departure" for time already served in state custody. (*Id*. at 6–8). He contends that defense counsel provided only a "bare bones argument" in his request for a downward departure in his sentencing memorandum, and that due to Supreme Court precedent he could not receive credit for the time spent in state custody. (*Id*. at 6). Jordan argues that only the Court could have ensured that he received credit, and defense counsel's failure to explain in the sentencing memorandum and at the sentencing hearing "how the Court should award jail-time credit under Section 5G1.3(b)" was deficient performance that caused him prejudice. (*Id*. at 8–9).

Defense counsel filed an affidavit addressing Jordan's claims. (ECF No. 42). According to defense counsel, Jordan would have been exposed to a significantly greater penalty under the indictment in *Jordan I*, and Jordan decided to accept the plea agreement offered by the Government without consulting defense counsel. (*Id*. at 1–2). He expressly denies the claims in Ground One. (*Id*. at 2). As to Ground Two, defense counsel notes that Jordan was sentenced to the low end of his USSG range, and the Court

agreed with defense counsel's argument that Jordan should be given credit for time spent in jail on state charges. (*Id.* at 2).

Respondent filed its response opposing Jordan's motion on October 20, 2021. (ECF No. 43). First, Respondent contends that Jordan's claim that proper criminal procedure was not followed is procedurally defaulted because he did not raise it on appeal and has no excuse for his failure to do so. (*Id.* at 10–12). As to the merits of his claims, Respondent emphasizes that Jordan waived his right to indictment and at his plea hearing affirmed that he had discussed the issue with defense counsel and thus defense counsel was not ineffective. (*Id.* at 15–16). Further, Respondent notes that defense counsel **did** argue for a downward departure based on Jordan's time spent in state custody at the sentencing hearing. (*Id.* at 16).

On December 6, 2021, Jordan filed a reply. (ECF No. 45). He disputes Respondent's argument that his claims of ineffective assistance of counsel are procedurally barred. (*Id.* at 2–3). He reiterates his belief that he is entitled to relief on Ground One because he was deprived of his right to have certain hearings after the information was filed in *Jordan II*. (*Id.* at 3–4). He further restates his claim as to Ground Two, noting that defense counsel cited no case law in support of his request that Jordan be given jail-time credit and asserting that defense counsel did not adequately prepare for the sentencing hearing. (*Id.* at 5–6). Jordan contends that he received only 59 days of jail credit "instead of receiving a fully concurrent sentence and credit" and asks the Court to grant him relief or conduct an evidentiary hearing. (*Id.* at 6–7).

## II.    **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. *Wall v. Kholi*, 562 U.S. 545, 552-

53 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02-CR-65, Civ.A. 2:05-CV-91, 2006 WL 36859, at \*2 (E.D. Va. Jan. 4, 2006). Consistent with the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

## III.   Discussion

Jordan challenges the validity of his judgment on the basis that he received ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees every criminal defendant "the right to the effective assistance of counsel."

*Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. This two-prong test requires the defendant to show that his counsel's performance was objectively unreasonable, and that the defendant was prejudiced by counsel's deficient performance. *Id.*

Jordan pled guilty to the charge in the information in *Jordan II*. In the context of a guilty plea, the Court considers whether the plea was constitutionally valid despite the alleged ineffective assistance. The standard for determining a guilty plea's constitutional validity is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When considering this standard, courts should look to the totality of the circumstances surrounding the guilty plea. *Burket v. Angelone*, 208 F.3d 172, 189–90 (4th Cir. 2000). Where a movant "alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea." *United States v. Holbrook*, 613 F. Supp. 2d 745, 761 (W.D. Va. 2009); *see also Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."); *Bousley v. United States*, 523 U.S. 614, 618 (1998).

Before accepting a guilty plea, a district court must conduct a plea colloquy under Rule 11 of the Federal Rules of Criminal Procedure to determine that the defendant comprehends the nature of the charges to which he is pleading guilty, the maximum possible penalty that he could face, any mandatory minimum penalty for such crime(s), and the rights that he relinquishes by pleading guilty. *Hernandez v. United States*, No.

3:14-CR-82-RJC-8, 2018 WL 3381429, at \*6 (W.D.N.C. July 11, 2018) (citing Fed. R. Crim. P. 11(b)(1) and *United States v. DeFusco*, 949 F.2d 114, 116 (4th Cir. 1991)). "An appropriately conducted Rule 11 proceeding raises a strong presumption that the defendant's plea is final and binding and a defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity that presents a formidable barrier in any subsequent collateral proceedings." *United States v. Swinney*, No. 1:13-CR-422 (LMB), 2015 WL 9593651, at \*4 (E.D. Va. Dec. 31, 2015) (quoting *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) and *United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004)) (internal markings omitted). "Accordingly, a § 2255 movant who accepts a plea agreement 'is bound by the representations he makes under oath during [his] plea colloquy' unless he presents 'clear and convincing evidence' contradicting those representations. *Id.* (quoting *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992)). Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216, 221–22 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court ... carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.*

### A.    *Failure to challenge procedural issues*

Jordan claims that defense counsel rendered ineffective assistance because

10

defense counsel did not object to or inform Jordan of his right to have certain hearings prescribed by the Federal Rules of Criminal Procedure. (ECF No. 32 at 4). Respondent disagrees, arguing that this does not constitute ineffective assistance. (ECF No. 43 at 16).

Respondent is correct. While it is true that Jordan was not arrested on the information in *Jordan II*, and the Court held no initial appearance or preliminary hearing, defense counsel was not constitutionally ineffective for failing to object to the lack of an arrest warrant, initial appearance, or preliminary hearing. Rule 5 of the Federal Rules of Criminal Procedure requires an initial appearance when a defendant is arrested or served with a summons to appear in court. Here, Jordan was charged with identical conduct in both *Jordan I* and *Jordan II*. When he was arrested in *Jordan I,* he received an initial appearance, during which he was fully advised of his rights and of the charge against him, and he was provided with counsel. *Jordan I*, ECF Nos. 15, 17. When the charge in the superseding indictment was later asserted in an information, Jordan was brought to court pursuant to a writ of habeas corpus ad prosequendum in order to enter a guilty plea. (ECF No. 6). It is obvious from the record of both cases, as well as the plea agreement, that the information was filed in *Jordan II* for the sole purpose of resolving the charge in *Jordan I*; they were not meaningfully separate prosecutions. The purpose of an initial appearance is to inform the defendant of the charge against him and of his rights; as such,, Jordan effectively received that advice relative to the criminal conduct set forth in the information. Jordan did not receive a preliminary hearing in either *Jordan I* or *Jordan II*, because he was not entitled to one. Fed. R. Crim. P. 5.1(a)(4) explicitly states that a preliminary hearing is not held when the defendant has been indicted, or when he is charged in an information. Given that Jordan received a recitation of his rights, as well as an explanation of the criminal conduct giving rise to the indictment, and later the

information, and given that he was not entitled to a preliminary hearing, defense counsel was not ineffective when he failed to ask for such hearings.

In any event, even assuming that defense counsel's failure to challenge the lack of a warrant and hearings was deficient, nothing in Jordan's motion shows that he was prejudiced except his self-serving conclusory statement that there is a "reasonable probability" he would not have pled guilty. Jordan makes no attempt whatsoever to explain how his decision would have been affected if counsel had insisted the Court issue an arrest warrant or hold another initial appearance. In fact, the circumstances strongly suggest the opposite as the charge in the information in *Jordan II* involved the very same conduct as that asserted in the indictment in *Jordan I*. Even after receiving all of the procedural hearings associated with the claim in *Jordan I*, Jordan decided to plead guilty.[3] The Government moved to schedule a plea hearing the very day the information in *Jordan II* was filed. Indeed, in *Jordan I*, the Government explained to the Court that Jordan had already decided to enter a guilty plea to the charge asserted in the information, and the guilty plea was intended to resolve *Jordan I*. *Jordan I,* ECF No. 66. Therefore, the lack of an initial appearance and defense counsel's failure to object necessarily had no effect on Jordan's decision to plead guilty, let alone such an effect as to render the plea anything less than knowing and voluntary as determined by the Court.

In addition, as a general rule, claims of error that could have been raised on direct appeal, but were not, may not be raised on collateral review unless the petitioner shows cause and prejudice or actual innocence of the offense. *Massaro v. United States*, 538

---

[3] The undersigned notes that the plea agreement was quite beneficial to Jordan. Had he proceeded to trial and lost, his USSG sentence range would have been calculated using a base offense level of 34, without a three level decrease for acceptance of responsibility, resulting in a USSG sentence range that would have been more than double the range negotiated in his plea agreement.

U.S. 500, 504 (2003); *Bousley v. United States,* 523 U.S. 614, 622 (1998). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999)) (internal marks omitted). In addition, the petitioner must show more than simply a possibility of prejudice; instead, he must show that an error occurred which caused an "actual and substantial disadvantage" tainting the entire proceeding with an "error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504. The burden to overcome procedural default rests with Jordan as he is the person attacking his sentence. *United States v. Fugit,* 703 F.3d 248, 253 (4th Cir. 2012).

There is no doubt that Jordan's claims pertaining to the lack of pretrial hearings were procedurally defaulted when he failed to raise them on appeal. While a claim of ineffective assistance of counsel may constitute cause to excuse procedural default, it is only an excuse when the claim has merit. *Murray v. Carrier*, 477 U.S. 478 (1986). As explained above, Jordan's claim of ineffective assistance does not have merit. Furthermore, Jordan is unable to demonstrate actual innocence, as he admitted under oath that he was in fact guilty of the offense and described what he did that made him guilty of the crime. (ECF No. 27 at 13-15). Jordan's statements made during the plea hearing are afforded a strong presumption of veracity, which Jordan has failed to rebut here. *U.S. v. Lemaster,* 403 F.3d 216, 221–22 (4th Cir. 2005).

In sum, because there is no credible allegation of ineffective assistance of counsel

13

based on defense counsel's failure to challenge the lack of routine procedural hearings, and likewise no showing to overcome procedural default of this claim, the undersigned **FINDS** that Jordan is not entitled to relief on Ground One.

### B.   *Failure to argue for a downward departure*

In Ground Two, Jordan argues that defense counsel was ineffective for failing to successfully argue for a downward departure based on the time Jordan spent in state custody after being arrested for the same conduct that gave rise to his federal charges. (ECF No. 32 at 6, 8–9). He insists that if defense counsel had been better prepared, he would have explained the relevant Supreme Court precedent in *Witte v. United States*, 515 U.S. 389 (1992), creating is a "reasonable probability" that his sentence would have been adjusted downward. (*Id.* at 8–9). In his reply memorandum, Jordan acknowledges that he received 59 days of jail credit toward his federal sentence and attaches an exhibit showing that he was credited for time spent in jail from April 17, 2020 until June 14, 2020. (ECF Nos. 45 at 6–7; 45-1 at 3). However, he claims that if defense counsel had moved for a downward departure pursuant to USSG § 5G1.3(b), the Court would have exercised its authority "to impose a fully concurrent sentence" and award him credit from November 9, 2018 through April 16, 2020. (ECF No. 45 at 5-7).

To establish prejudice in the context of sentencing, movants must demonstrate a reasonable probability that their sentence would have been more lenient had counsel's performance not been deficient. *Royal v. Taylor,* 188 F.3d 239, 249 (4th Cir. 1999). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." *United States v. Rhynes*, 196 F.3d 207, 232 (4th Cir. 1999), *opinion vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000). Starting first with Jordan's argument regarding the application of USSG § 5G1.3(b), the record reflects that defense

14

counsel specifically asked the Court to adjust Jordan's sentence based on that section of

the USSG. (ECF No. 31 at 9). However, the Court did not entertain a sentence adjustment,

and it is unlikely that additional case law would have persuaded the Court to make such

an adjustment. USSG § 5G1.3(b) states as follows:

> **(b)** If subsection (a) does not apply, and a term of imprisonment resulted
> from another offense that is relevant conduct to the instant offense of
> conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §
> 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be
> imposed as follows:
>
> **(1)** the court shall adjust the sentence for any period of imprisonment
> already served on the undischarged term of imprisonment if the court
> determines that such period of imprisonment will not be credited to the
> federal sentence by the Bureau of Prisons; and
>
> **(2)** the sentence for the instant offense shall be imposed to run concurrently
> to the remainder of the undischarged term of imprisonment.

USSG 5G1.3 (Nov. 2018). This provision simply does not apply to Jordan's case, because

he did not receive a "term of imprisonment" resulting from another offense that was

"relevant conduct" to the instant offense of conviction. Although Jordan spent time in jail

as a state pretrial detainee, both the parole supervision hold and the state drug-trafficking

charges were dismissed without imposition of a term of imprisonment. Consequently,

USSG §5G1.3(b) played no role in Jordan's sentence, and additional preparation by

defense counsel would not have changed that fact. *See Amato v. United States,* No. 19-

19449 (MAS), 2021 WL 5578850, at *5 (D.N.J. Nov. 29, 2021) (explaining that "[a]

prerequisite for a reduction of sentence under this guideline section [USSG § 5G1.3(b)] is

thus an undischarged prison term – i.e., a criminal sentence stemming from a conviction

on a crime which is relevant conduct to the current offense."); *United States v. Stebbins,*

523 Fed. Appx. 1 (1st Cir. 2013) (holding that pretrial detention is not a "term of

imprisonment" under USSG § 5G1.3(b)); *United States v. Diggs,* 423 F.Supp.3d 445, 454

(W.D. Mich. 2019) (holding that pretrial detention followed by a dismissed state charge does not constitute an undischarged term of imprisonment); *United States v. Tucker,* No. 15-cr-95 (AJN), 2017 WL 2955777, at *1 (S.D.N.Y Jul. 11, 2017) (holding that pretrial detention on a state charge that is dismissed prior to federal sentencing is not an "undischarged term of imprisonment" necessary to apply USSG § 5G1.3(b)).

Four cases Jordan cites in support of his position that defense counsel should have argued for a downward departure—*Witte v. United States,* 515 U.S. 389 (1995), *United States v. Descally*, 254 F.3d 1328, 1331 (11th Cir. 2001), *Blount v. United States,* 330 F.Supp.2d 493 (E.D. Pa. 2004), and *United States v. Elder*, No. 13-20807, 2017 WL 3727229 (E.D. Mich. Aug. 30, 2017)—simply do not apply to Jordan's situation. To begin, other than the *Witte* case, none of the cases are precedent in this Court. More importantly, all of the cases are factually distinguishable from Jordan's case.

In *Witte,* the Supreme Court held that the bar against double jeopardy is not triggered when a sentencing court increases its sentence based on related conduct for which the defendant has been separately convicted. *Witte,* 515 U.S. at 404-05. The Supreme Court explained that the concept of relevant conduct is reciprocal in the USSG with § 5G1.3 mitigating "the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Id.* at 405. Clearly, *Witte* has no relevance to Jordan's sentencing, because Jordan did not receive two convictions and sentences for the same conduct.

*Descally* and *Blount* likewise are inapposite, because they involved the district court's discretion to make sentence adjustments to account for undischarged state sentences. In *Descally,* the defendant challenged the court's failure to adjust his sentence in an amount equal to the time he had spent serving a state sentence imposed for related

16

conduct. *Descally,* 254 F.3d at 1329. The appellate court held that a sentencing court should take into consideration the time served by a defendant on an undischarged state sentence arising from the same conduct or relevant conduct resulting in the federal sentence. In *Blount,* the defendant argued that his lawyer was ineffective for failing to request a downward departure of his federal sentence when the defendant was serving two undischarged states sentences. *Blount,* 330 F.Supp.2d at 498-99. The court concluded that defense counsel should have asked for a downward departure, because a departure conceivably could have been awarded. Accordingly, the court decided to re-sentence the defendant in order to determine whether a downward departure was warranted on the facts of the case.  In contrast to these cases, however, Jordan was not serving an undischarged state sentence at the time he was sentenced by this Court.

Finally, *Elder* addressed the question of whether a federal court had the authority to order its sentence to run concurrently with a state sentence that had not yet been imposed. The reviewing court determined that the district court did have that discretion, but had failed to recognize its discretion at sentencing. The court explained that prejudice was presumed "because the district court's failure to recognize its discretion in sentencing renders it impossible for the defendant to show that the subjective decision of the court would have been different if the error had not occurred." *Elder,* 2017 WL 3727229, at * 2. The *Elder* decision is inapplicable in this case, because Jordan was not anticipating a state sentence that had not yet been imposed. The State of West Virginia had dismissed the drug trafficking charges in July 2019, showing no interest in resurrecting them, and Jordan's parole was discharged in April 2020, leaving no undischarged or anticipated state sentence for this Court to consider at its sentencing in June 2020.

During the sentencing hearing, defense counsel raised on multiple occasions the

17

issue of Jordan receiving credit for the time he spent in custody on state charges. Clearly, defense counsel did not overlook the argument, and he pressed the Court to adjust Jordan's sentence to account for this time. (ECF No. 19 at 3, ECF No. 31 at 9, 15). There simply was nothing more that defense counsel could have done. The Court heard the argument and acknowledged its merit, indicating that a recommendation for jail credit would be made to the BOP. However, the Court did not conclude that a further sentence reduction was appropriate to account for Jordan's pretrial time spent in state custody, and there exists no reasonable probability that Jordan's sentence would have been lowered. Jordan was already sentenced at the very bottom of a USSG range that was four levels below the range consistent with his offense. The Court emphasized to Jordan that he was fortunate to get the benefit of the plea agreement, because, but for the agreement, "it would have been extremely likely that [Jordan] would have been held accountable for this being ice and a level 34" would have been used in the sentence calculation, adding years to his sentence. (ECF No. 31 at 11).

Accordingly, what Jordan can request is credit for the time he spent in state pretrial detention. With respect to jail credits, federal district courts do not have the authority to award such credits at sentencing. 18 U.S.C. § 3585; *United States v. Wilson*, 503 U.S. 329, 333 (1992). "Following a federal conviction and sentencing, the United States Attorney General, acting through the BOP, is responsible for calculating an inmate's term of confinement, including a determination of when the sentence commences." *Perkins v. Saad*, No. 5:16CV182, 2017 WL 6001513, at *3 (N.D.W. Va. Sept. 21, 2017), *report and recommendation adopted,* No. 5:16CV182, 2017 WL 6001504 (N.D.W. Va. Dec. 4, 2017) (citing *Wilson*, 503 U.S. at 334). In computing an inmate's term of imprisonment, the BOP must adhere to 18 U.S.C. § 3585(b) which provides as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences
>> (1) as a result of the offense for which the sentence was imposed; or
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>> that has not been credited against another sentence.

The BOP has "developed detailed procedures and guidelines for determining credit available to prisoners." *Wilson,* 503 U.S. at 334. Accordingly, if Jordan believes that the BOP miscalculated his jail credits, or failed to follow the appropriate procedures and guidelines, he should challenge the calculation using the BOP's Administrative Remedy Program outlined in 28 C.F.R. § 542.10, *et seq.* Only after exhausting his administrative remedies may Jordan bring the jail credit calculation issue to the court. *Id.*

In sum, defense counsel successfully argued for Jordan to receive the lowest possible sentence within the bounds of the plea agreement and thus the undersigned **FINDS** that Jordan does not demonstrate that any deficiency in the performance of defense counsel affected the knowing, voluntary nature of his guilty plea or the length of his sentence and further **FINDS** that defense counsel was not constitutionally ineffective at sentencing. Jordan has failed to establish by a preponderance of the evidence that his judgment was imposed improperly pursuant to § 2255. Accordingly, his motion under § 2255 should be denied.

## IV.    **Proposal and Recommendations**

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 32), be **DENIED,** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: April 8, 2022

Cheryl A. Eifert
United States Magistrate Judge

20